UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

JENNIFER PELLOW as Personal
Representative of the Estate of
NATHAN WESLEY PELLOW,

      Plaintiff,

v.

KEVIN BARNHILL, SHANE MCKIBBEN,
ARTHUR L. GILL, ROBERT ROY,
JOHN ADAMS, and DALE VAN HORN,
Jointly and Severally,

      Defendants.

Case No: 15-11765

Hon. Terrance G. Berg
Magistrate R. Steven Whalen

---

| | |
|---|---|
| BEN M. GONEK (P43716)<br>Law Offices of Ben Gonek, PLLC<br>Attorneys for Plaintiff<br>615 Griswold Street, Suite 1116<br>Detroit, MI 48226<br>(313) 963-3377<br>ben@goneklaw.com | JOHN J. GILLOOLY (P41948)<br>Garan Lucow Miller, P.C.<br>Attorneys for Defendants Barnhill,<br>  McKibben, Roy, Adams & VanHorn<br>1155 Brewery Park Blvd., Ste. 200<br>Detroit, MI 48207<br>(313) 446-5501<br>jgillooly@garanlucow.com |
| JOEL B. SKLAR (P38338)<br>Law Offices of Joel B. Sklar<br>Co-counsel for Plaintiff<br>615 Griswold Street, Suite 1116<br>Detroit, MI 48226<br>(313) 963-4529<br>joel@joelbsklarlaw.com | ROBERT C. DAVIS (P40155)<br>Davis Burket Savage Listman Taylor<br>Attorney for Defendant Gill<br>10 S. Main Street, Suite 401<br>Mt. Clemens, MI 48043<br>(586) 469-4300<br>rdavis@dbsattorneys.com |

---

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, , KEVIN BARNHILL, SHANE McKIBBEN, ARTHUR L. GILL, ROBERT ROY, JOHN ADAMS and DALE VAN HORN, by and through their attorneys, GARAN LUCOW MILLER, P.C., and in support of their motion for summary judgment of Plaintiff's complaint, states as follows:

1.    This motion is brought pursuant to Fed. R. Civ. P. 12(b)(6) and 56.

2.    Plaintiff, Jennifer Pellow, as personal representative of the Estate of Nathan Wesley Pellow, brought the instant action seeking to impose liability on the defendant police officers asserting claims under 42 U.S.C. § 1983 arising out of the death of Nathan Pellow during the course of his arrest on August 30, 2013.

3.    Specifically, Plaintiff alleges two counts:  Count I alleges that the defendant officers' use of force violated Nathan Pellow's Fourth Amendment right to be free from the use of excessive force; Count II alleges that the defendant officers' use of force violated Nathan Pellow's Fourteenth Amendment right to due process of law.

4.    For the reasons stated more fully in the accompanying brief in support, the defendant officers are entitled to qualified immunity and summary judgment of Plaintiff's claims as there exists no genuine issue of material fact that the force used by the defendant officers was objectively reasonable in light of the totality of the circumstances they confronted.

5.      Pursuant to Local Rule 7.1, on December 9, 2016, the office of the undersigned contacted counsel for Plaintiff seeking concurrence in the relief sought herein, however concurrence was not obtained by the date of this motion.

WHEREFORE, Defendants, KEVIN BARNHILL, SHANE McKIBBEN, ARTHUR L. GILL, ROBERT ROY, JOHN ADAMS and DALE VAN HORN, respectfully request that this Honorable Court grant their motion and enter an order granting Defendants summary judgment of Plaintiff's complaint.

Respectfully submitted:

GARAN LUCOW MILLER, P.C.

s/ John J. Gillooly
John J. Gillooly
Attorney for Defendants
1155 Brewery Park Blvd., Suite 200
Detroit, MI  48207
313.446.5501
jgillooly@garanlucow.com
P41948

Dated:  December 12, 2016

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

JENNIFER PELLOW as Personal
Representative of the Estate of          Case No:   15-11765
NATHAN WESLEY PELLOW,

                                         Hon. Terrance G. Berg
         Plaintiff,                      Magistrate R. Steven Whalen
v.

KEVIN BARNHILL, SHANE MCKIBBEN,
ARTHUR L. GILL, ROBERT ROY,
JOHN ADAMS, and DALE VAN HORN,
Jointly and Severally,

         Defendants.

---

| |
|---|
| BEN M. GONEK (P43716)<br>Law Offices of Ben Gonek, PLLC<br>Attorneys for Plaintiff<br>615 Griswold Street, Suite 1116<br>Detroit, MI  48226<br>(313) 963-3377<br>ben@goneklaw.com | JOHN J. GILLOOLY (P41948)<br>Garan Lucow Miller, P.C.<br>Attorneys for Defendants Barnhill,<br>McKibben, Roy, Adams & VanHorn<br>1155 Brewery Park Blvd., Ste. 200<br>Detroit, MI  48207<br>(313) 446-5501<br>jgillooly@garanlucow.com |
| JOEL B. SKLAR (P38338)<br>Law Offices of Joel B. Sklar<br>Co-counsel for Plaintiff<br>615 Griswold Street, Suite 1116<br>Detroit, MI  48226<br>(313) 963-4529<br>joel@joelbsklarlaw.com | ROBERT C. DAVIS (P40155)<br>Davis Burket Savage Listman Taylor<br>Attorney for Defendant Gill<br>10 S. Main Street, Suite 401<br>Mt. Clemens, MI  48043<br>(586) 469-4300<br>rdavis@dbsattorneys.com |

---

## BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................. i

INDEX OF AUTHORITIES ...................................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ........................... v

STATEMENT OF MATERIAL FACTS ................................... 1

LEGAL ARGUMENT ............................................................. 9

    I. The Defendant Officers' Use of Force Was Objectively Reasonable In Light Of The Totality Of The Circumstances. ................................ 12

        A. The Officers' Use of Force to Takedown And Handcuff Nathan Pellow ........................................................... 15

        B. The Alleged Use of Force After Handcuffing ................................ 17

CONCLUSION ................................................................. 24

LIST OF EXHIBITS ........................................................... 25

i

# INDEX OF AUTHORITIES

## Cases

*Baker v. McCollan*,
 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)............................................. 9

*Brosseau v. Haugen*,
 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)...................................... 10

*Caie v. W. Bloomfield Twp.*,
 485 F. App'x 92 (6th Cir. 2012).................................................. v, 14, 16

*Claybrook v. Birchwell*,
 274 F.3d 1098 (6th Cir. 2001) ............................................................. 15

*Cockrell v. City of Cincinnati*,
 468 F. App'x 491 (6th Cir. 2012)........................................................ v, 14

*Coley v. Lucas Cnty.*,
 799 F.3d 530 (6th Cir. 2015) ............................................................. 12

*Feathers v. Aey*,
 319 F.3d 843 (6th Cir. 2003) ............................................................. 11

*Fox v. DeSoto*,
 489 F.3d 227 (6th Cir. 2007) ............................................................. 13

*Graham v. Connor*,
 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)............................ 12, 13

*Hagans v. Franklin Cnty. Sheriff's Office*,
 695 F.3d 505 (6th Cir. 2012) .......................................................... v, 14, 16

*Humphrey v. Mabry*,
 482 F.3d 840 (6th Cir. 2007) ............................................................. 10

*Lanman v. Hinson*,
 529 F.3d 673 (6th Cir. 2008) ............................................................. 12

*Pearson v. Callahan*,
 555 U.S. 223; 129 S. Ct. 808; 172 L. Ed. 2d 565 (2009) ............................. 9, 10

*Saucier v. Katz*,
 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).............................. 10

*Scott v. Harris*
 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)........................... 11

*Silberstein v. City of Dayton*,
 440 F.3d 306 (6th Cir. 2006) ............................................................. 10

*Turner v. Scott,*
 119 F.3d 425 (6th Cir. 1997)................................................................. 19

*Williams v. Ingham,*
 373 F. App'x 542 (6th Cir. 2010)........................................................ 14

*Williams v. Sandel,*
 433 F. App'x 353 (6th Cir. 2011)............................................. v, 14, 16

## Statutes

42 U.S.C. § 1983 ..................................................................................... 2, v

## CONCISE STATEMENT OF ISSUE PRESENTED

Whether the defendant officers are entitled to qualified immunity and summary judgment of Plaintiff's complaint where there exists no genuine issue of material fact that the force they used was objectively reasonable in light of the totality of the circumstances.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

42 U.S.C. § 1983

*Hagans v. Franklin Cnty. Sheriff's Office,*
 695 F.3d 505 (6th Cir. 2012)

*Williams v. Sandel,*
 433 F. App'x 353 (6th Cir. 2011)

*Cockrell v. City of Cincinnati,*
 468 F. App'x 491 (6th Cir. 2012)

*Caie v. W. Bloomfield Twp.,*
 485 F. App'x 92 (6th Cir. 2012)

## STATEMENT OF MATERIAL FACTS

1.     On August 30, 2013, defendant Officer Barnhill was dispatched to the scene of a reported car accident involving Plaintiff's decedent, Nathan Pellow. (Complaint, ¶12)[1]

2.     Nathan Pellow's vehicle struck a trailer located at 25509 Doncea Drive in Warren, Michigan. (Complaint, ¶ 11)

3.     Nathan Pellow was injured in the accident. (Complaint, ¶ 9)

4.     Upon arriving at the scene of the accident, Officer Barnhill exited his squad car and encountered Nathan Pellow; as recorded on the squad car video of Officer Barnhill's vehicle, Nathan Pellow swung at Officer Barnhill and then walked away from him. (Dashcam Video - Car 27 at 11:14:29 – 11:15:59)

5.     Officer Barnhill requested assistance from Defendant Officer McKibben who arrived on the scene shortly after Officer Barnhill. (Complaint, ¶ 13)

---

[1] The following exhibits are attached in support of this motion:  Exhibit A, Complaint; Exhibit B, Dashcam Video – Car 27 (Barnhill); Exhibit C, Dashcam Video/Audio – Car 31 (McKibben); Exhibit D, Dashcam Video – Car S-1 (Gill); Exhibit E, deposition of firefighter Brian Jacobs; Exhibit F, deposition of Richard Breen; Exhibit G, deposition of James Muirhead; Exhibit H, deposition of Curtis Thrift; Exhibit I, deposition of Theodore Garwood; Exhibit J, deposition of Arthur Gill; Exhibit K, Warrant; Exhibit L, Affidavit of Jere Green; Exhibit M, Police Incident Report; Exhibit N, May 15, 2016 email; Exhibit O, deposition of Shane McKibben; Exhibit P, deposition of Kevin Barnhill; Exhibit Q, deposition of Robert Roy; Exhibit R, deposition of Dale Vanhorn; Exhibit S, Plaintiff's discovery responses.

6.     Officer McKibben arrived on the scene; as recorded on the squad car video of Officer McKibben's vehicle, and on Officer McKibben's body-microphone,[2] the officers repeatedly told Nathan Pellow to get down on the ground but Mr. Pellow refused to comply. (Dashcam Video/Audio - Car 31 at 11:17:05 – 11:20:24)

7.     As recorded on the squad car video of Officer McKibben's vehicle, and on Officer McKibben's body-microphone, Nathan Pellow refused to submit to the officers and continued to walk/run away from them, giving chase. (Dashcam Video/Audio - Car 31 at 11:17:05 – 11:20:24)

8.     While Officers McKibben and Barnhill continued to follow/chase Nathan Pellow, five Warren Fire Department firefighters arrived at the scene; Officer McKibben told the firefighters that he and Officer Barnhill needed help getting Nathan Pellow on the ground.  (Jacobs, pages 10-13, 31; Breen, pages 9-14; Muirhead, pages 10-14; Thrift, pages 9-11; Garwood, pages 9-14; Dashcam Video/Audio - Car 31 at 11:20:30)

9.     The firefighters assisted the officers in trying to secure Mr. Pellow; at one point, Mr. Pellow walked up a set of steps in an apparent attempt to enter a trailer; Mr. Pellow punched firefighter Jacobs in the face and firefighter Jacobs

---

[2] As evidenced by Officer McKibben's dashcam video recording, the VideoHawk Viewer "transmitter" and "lights" indicators on the video are turned "on" at 11:13:07 to 11:13:11, indicating that Officer McKibben's body-microphone began recording at this point.  (Dashcam Video/Audio - Car 31 at 11:13:07).

tackled Mr. Pellow off of the steps and onto the ground. (Jacobs, pages 12-13, 20-21; Breen, pages 13-14; Muirhead, page 11; Dashcam Video/Audio - Car 31 at 11:20:30 – 11:24:17).

10.    Once Nathan Pellow was on the ground, Officers McKibben and Barnhill, along with all five firefighters, attempted to place Mr. Pellow into handcuffs but Mr. Pellow continued to struggle and resist. (Jacobs, pages 10-14, 31; Breen, pages 9-18, 23-24; Muirhead, pages 10-15; Thrift, pages 9-13; Garwood, pages 9-14; Dashcam Video/Audio - Car 31 at 11:20:30 – 11:24:17)

11.    During the struggle, Mr. Pellow bit firefighter Thrift on the arm. (Thrift, pages 12-14; Muirhead, page 14)

12.    Defendant Officers Roy, Adams and Vanhorn, as well as former Warren police Sergeant Arthur Gill arrived on the scene while Officers McKibben and Barnhill, with the help of the firefighters, were struggling to handcuff Mr. Pellow. (Complaint, ¶ 18; Gill, pages 12-14)

13.    Eventually, Officers McKibben and Barnhilll and the firefighters were able to place handcuffs on Mr. Pellow's wrists and shackles on Mr. Pellow's ankles. (Jacobs, pages 10-14; Breen, pages 9-18, 23-24; Muirhead, pages 10-15; Thrift, pages 9-13; Garwood, pages 9-14; Dashcam Video - Audio, Car 31 at 11:20:30 – 11:24:17)

14.     According to the firefighters, when Mr. Pellow was finally secured, the officers and firefighters stood up, and nearly immediately noticed that Plaintiff was not breathing normally.  (Jacobs, pages 13-15, 19, 21-22, 29-33; Breen, pages 17-19, 23-24; Muirhead, pages 12-15, 28-29; Dashcam Video/Audio - Car 31 at 11:24:59 – 11:25:01)

15.     The firefighters and officers rolled Mr. Pellow over from his stomach onto his back and the firefighters began treating him.  (Jacobs, pages 13-15, 19, 21-22, 29-33; Breen, pages 17-19, 23-24; Muirhead, pages 12-15, 28-29).

16.     According to former Sergeant Arthur Gill,[3] after Mr. Pellow was handcuffed, no longer resisting, and lying face down on the ground, and after all of the officers and firefighters other than Officer McKibben had left the area and returned to the ambulance/firetruck (approximately 100 to 150 yards away), Arthur Gill saw Officer McKibben stand with two feet on Mr. Pellow's back and bounce; Arthur Gill contends that he told Officer McKibben to get off.  (Gill, pages 14-16, 43)

17.     The firefighters on the scene all deny that Officer McKibben stood or bounced on Mr. Pellow's back; the firefighters deny leaving Mr. Pellow's side from the time he was handcuffed until he was turned over to the hospital.  (Jacobs,

---

[3] Arthur Gill was terminated from the City of Warren on August 7, 2014.  (Gill, pages 8-9)  Mr. Gill is currently arbitrating an employment claim with the City of Warren and defending criminal charges relating to assault and battery and intentional filing of a false report of child abuse.  (Gill,pages 55-57; Warrant)

pages 13-15, 19-22, 29-33; Breen, pages 17-19, 23-24; Muirhead, pages 12-15, 21, 28-29; Garwood, page 27; Thrift, page 21)

18.    The audio from the body-microphone worn by Officer McKibben does not corroborate Art Gill's testimony that he told Officer McKibben to get off of Mr. Pellow's back.  (Dashcam Video/Audio – Car 31, 11:24:17 – 11:25:34)

19.    There is no audio from Arthur Gill's dashcam video corroborating his alleged statement to Officer McKibben.  (Dashcam Video – Car S-1).

20.    Arthur Gill testified that his body-microphone was activated and claims that the audio must have been erased. (Gill, pages 28-31, 47-51)

21.    The affidavit of Warren Police Commissioner Jere Green and the video of Arthur Gill's car evidences that the VideoHawk Viewer "transmitter" button was never turned on, indicating that Arthur Gill's body-microphone was never turned on and no audio was recorded.  (Affidavit of Jere Green; Dashcam Video - Car S-1).

22.    Despite having allegedly witnessed this alleged bouncing by Officer McKibben, Mr. Gill claims that he never wrote a report of the incident.  When presented with a copy of the police report containing a narrative written by him – a narrative which makes no mention of Officer McKibben standing/bouncing on Mr. Pellow's back – Mr. Gill claims that he did not write it.  (Gill, pages 20-23, 54-55; Police Incident Report).

23.    The Warren Police Department utilizes the Courts and Law Enforcement Management Information System (CLEMIS) for preparing and maintaining incident reports; CLEMIS is administered by Oakland County. (Affidavit of Jere Green)

24.    Based upon Commissioner Green's review of the CLEMIS log for the subject incident (attached to his Affidavit as Exhibit A), former Sergeant Gill logged into CLEMIS and viewed the incident report on the afternoon of the subject incident (August 30, 2013) at 2:31:34 p.m. and again at 2:51:56 p.m.; former Sergeant Gill also logged in and viewed the incident report on August 31, 2013 at 11:17:19 a.m.; former Sergeant Gill began his report on August 31, 2013 at 11:25:29 a.m. and he updated the narrative of his report on September 1, 2013 from 12:23:25 p.m. to 12:25:56 p.m. (Affidavit of Jere Green)

25.    According to Mr. Gill, the Warren Police Department knows and has access to officers' user names and passwords, and claims that someone other than him must have written the narrative attributed to him.  (Gill, pages 21-22).

26.    The Warren Police Department does not know or retain individual officers' passwords for CLEMIS; indeed, the Oakland County administrator of CLEMIS does not know or retain individual officers' passwords for CLEMIS. (Affidavit of Jere Green)

27.    If an officer's CLEMIS password needs to be reset, a member of Warren Police Department's Information Technology department will reset the officer's password to a generic default password and the officer is then able to reset the password himself. (Affidavit of Jere Green)

28.    Any and all activity related to an officer's CLEMIS password is recorded in an audit trail. (Affidavit of Jere Green)

29.    Based upon Commissioner Green's review of the audit trail of former Sergeant Gill (attached to his Affidavit as Exhibit B), there was no activity relative to Arthur Gill's CLEMIS password between January 25, 2013 and December 3, 2013; former Sergeant Gill's password was not changed on August 30, 2013, August 31, 2013, or on September 1, 2013 when the CLEMIS log indicates that he was viewing and updating the subject incident report. (Affidavit of Jere Green)

30.    Plaintiff initiated this action on May 18, 2015, alleging two counts of excessive force against the defendant officers under 42 U.S.C. § 1983. (Complaint)

31.    Plaintiff initially named Arthur Gill as a defendant. (Complaint)

32.    On July 12, 2016, following Mr. Gill's deposition, Plaintiff dismissed his claims against Mr. Gill.  (Doc. 28)

33.    On May 15, 2016, Plaintiff's counsel emailed counsel for the defendant officers advising that as a result of Mr. Gill's deposition testimony,

Plaintiff would be filing a complaint with the Federal Bureau of Investigations and/or the Department of Justice against the defendant officers relating to the subject incident. (May 15, 2016 email)

34.     As a result of Plaintiff's threatened pursuit of criminal charges, the defendant officers invoked their Fifth Amendment right against self-incrimination at their depositions.  (McKibben; Barnhill; Roy; Vanhorn; Adams)

35.     As of the date of this motion, to the best of the defendant officers' knowledge, Plaintiff has not followed through on her threat to file a claim against the defendant officers with the FBI or DOJ.  (See Plaintiff's discovery responses in which she states that, as of August 16, 2016, she possessed no documents submitted to the FBI or DOJ regarding this case.)

## LEGAL ARGUMENT

Plaintiff's complaint seeks to impose liability on the defendant officers for alleged violations of constitutional rights, asserting a cause of action under 42 U.S.C. §1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

§1983 does not *create* any substantive rights. Rather, a plaintiff must plead and prove a relevant right. See, *e.g.*, *Baker v. McCollan*, 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). It is the position of the defendant officers that the record of this case, taken in the light most favorable to Plaintiff, does not support a finding of a constitutional violation on the part of the defendant officers.

Further, the defendant officers are protected by the doctrine of qualified immunity which requires that this suit be dismissed unless Plaintiff can carry her burden of establishing that any right that was arguably violated was "clearly established" on the date of its alleged deprivation. In *Pearson v. Callahan*, 555 U.S. 223; 129 S. Ct. 808; 172 L. Ed. 2d 565 (2009), the United States Supreme Court explained this qualified immunity, at 129 S. Ct. at 815:

> * * * Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment,

9

distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) [Kennedy, J., dissenting) (citing *Butz v. Economou*, 438 U.S. 478, 507 (1978) (noting that qualified immunity covers 'mere mistakes in judgment, whether the mistake is one of fact or one of law")].

See also, *Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004); *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Court dictated a two-step inquiry which initially inquired as to the existence of a potential constitutional violation, and only then asked whether the implicated right was "clearly established". However, in *Pearson, supra*, the Court held that "the *Saucier* procedure should not be regarded as an inflexible requirement" [128 S. Ct. at 813], and that

> while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

> Although we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that it is often beneficial. For one thing, there are cases in which there would be little if any conservation of judicial resources to be had by beginning and ending with a discussion of the "clearly established" prong. "[I]t often may be difficult to decide whether a right is clearly established without deciding precisely what the constitutional right happens to be." *Lyons v. Xenia*, 417 F.3d 565, 581 (CA6 2005)

(Sutton, J., concurring). In some cases, a discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all. * * *  [128 S. Ct. at 818]

Further, and regardless of the sequence, the Sixth Circuit frequently employs a three-step inquiry, as set forth in *Feathers v. Aey*, 319 F.3d 843 (6th Cir. 2003), which also specifically inquires "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'"

In the case at bar, regardless of the sequence of the inquiry, and under either the two- or three-step approach, the defendant officers are entitled to qualified immunity because Plaintiff cannot demonstrate that the officers actions' were objectively unreasonable in light of clearly established law. In *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), the United States Supreme Court reiterated the standards and procedures applicable to motions for summary judgment:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" [citation and footnote omitted] "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact." [citation omitted] When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

To the extent that there are disputed facts in the case at bar, none of them constitute a genuine issue of material fact sufficient to defeat this motion for summary judgment.

## I.   THE DEFENDANT OFFICERS' USE OF FORCE WAS OBJECTIVELY REASONABLE IN LIGHT OF THE TOTALITY OF THE CIRCUMSTANCES.

Plaintiff's complaint alleges that the individual defendants used excessive force against Nathan Pellow in violation of his rights under the Fourth and Fourteenth Amendments. Although it is difficult to discern the exact basis for Plaintiff's claim under the Fourteenth Amendment, Plaintiff's complaint does not suggest another constitutional right other than the Fourth Amendment right to be free from excessive force.  "When a free citizen claims that a government actor used excessive force during the process of an arrest, seizure, or investigatory stop, [the Court] perform[s] a Fourth Amendment inquiry into what was objectively 'reasonable' under the circumstances. *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015), citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) and *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008).

The Fourth Amendment's reasonableness requirement establishes more than just "when" officers may seize an individual; it also governs "how [the seizure] is

carried out." *Graham v. Connor*, 490 U.S. 386, 395 (1989).   Excessive force inquiries in the context of a seizure balance "the nature and quality of the intrusion ... against the countervailing governmental interests at stake," and a Court must review the propriety of a seizure "from the perspective of a reasonable officer on the scene." *Id.* at 396.  Because "officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving"-a Court must avoid judgments predicated upon "the 20/20 vision of hindsight." *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal quotation marks and citation omitted).   As articulated by the Court of Appeals in *Fox v. DeSoto*, 489 F.3d 227, 236-237 (6th Cir. 2007):

> Claims of excessive force are analyzed under the objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene and not with a 20/20 hindsight.  An officer making an investigative stop or arrest has "the right to use some degree of physical coercion or threat thereof to effect it." Relevant considerations include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." The question we must ask is whether, under the totality of the circumstances, the officer's actions were objectively reasonable. [Citations omitted]

It is axiomatic that individual liability under Section 1983 typically requires that the defendant have personal involvement in the constitutional deprivation. Thus, in order to sustain their claim against the individual defendant officers,

Plaintiff must establish that Nathan Pellow suffered a specific injury as a result of specific conduct of each particular defendant and show an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode,* 423 U.S. 362, 371–72, 377; 96 S.Ct. 598; 46 L.Ed.2d 561 (1976).

Sixth Circuit case authority firmly establishes that police officers can use force – including use of batons, pepper spray and knee strikes (even multiple times) – to subdue a suspect who is actively resisting arrest. *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012); *e.g., Williams v. Sandel*, 433 F. App'x 353, 363 (6th Cir. 2011) (not excessive force to tase the suspect *thirty-seven* times (and use batons and pepper spray) because he actively resisted arrest). Active resistance includes "physically struggling with, threatening, or disobeying officers." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012) (collecting cases). In addition, a suspect who physically defies an officer's commands to give up his hands to be handcuffed is considered to be actively resisting. *Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 94, 96-97 (6th Cir. 2012); *see Williams v. Ingham*, 373 F. App'x 542, 548 (6th Cir. 2010). However, Sixth Circuit case authority is equally clear that police officers may not use force against a suspect once he is compliant, subdued, no longer resisting, or securely detained. *Hagans, supra*.

Accordingly, the dispositive question is whether the officers' use of force was objectively reasonable given Nathan Pellow was actively resisting arrest? Because courts in the Sixth Circuit analyze excessive force claims temporal segment by temporal segment, *Claybrook v. Birchwell*, 274 F.3d 1098, 1104 (6th Cir. 2001), the officers' use of force must be broken down into the relevant temporal segments: the takedown and handcuffing, and after he was handcuffed:

## A.   The Officers' Use of Force to Takedown and Handcuff Nathan Pellow.

The record evidence clearly establishes that Nathan Pellow actively resisted the officers' repeated attempts to subdue him.  The video/audio evidences Nathan Pellow swinging at the officers, refusing the officers' commands to get down on the ground, and walking/running away from the officers, requiring the officers to chase him around the mobile home park.  (Dashcam Video/Audio – Car 31, 11:17:05 – 11:24:17; Breen, pages 9-14, 16-17; Garwood, pages 9, 12-14; Jacobs, pages 10-14, 31; Muirhead, pages 10-14, 31-32; Thrift, pages 21-22).  Nathan Pellow refused to submit to the officers' control, despite the fact that the officers pushed him down, pepper-sprayed him multiple times, and attempted to kick him.[4]

---

[4] Plaintiff alleges that the officers struck Nathan Pellow with a flashlight. (Complaint, ¶ 15; Plaintiff's Discovery Responses, Request to Admit No. 1 and Interrogatory No. 1).  The firefighters who assisted Officers McKibben and Barnhill in subduing Nathan Pellow all deny that the officers struck Nathan Pellow with a flashlight. (Breen, page 20; Garwood, page 27, Jacobs, page 29; Muirhead, page 28; Thrift, page 21).

(Dashcam Video/Audio – Car 31, 11:17:05 – 11:24:17)   Further, the record evidence establishes that Nathan Pellow punched Warren firefighter Jacobs in the face while the officers and firefighters were trying to gain control over him. (Jacobs, pages 12-13, 20-21; Muirhead, page 11; Breen, pages 13-14).

Nathan Pellow continued to actively resist the officers'/firefighters' attempts to place him in handcuffs, struggling with his arms, kicking his legs, and even biting one of the firefighters.  (Thrift, pages 13, 22; Muirhead, pages 11-14, 31-32; Breen, pages 16-18; Garwood, pages 9, 12-14; Jacobs, pages 13-14, 31).  Indeed, Plaintiff admits that her husband resisted arrest *prior* to being handcuffed and subdued by the officers and firefighters.  (Plaintiff's Discovery Responses, Request to Admit No. 4)

Because there exists no genuine issue of material fact that Nathan Pellow was actively resisting the officers' attempts to gain control over him and handcuff him, the defendant officers' use of force in taking him down and placing him in handcuffs– including hitting/kicking him, using pepper spray, and allegedly striking him with a flashlight – was objectively reasonable under the totality of the circumstances.   *Williams, supra*; *Caie, supra*; *Hagans, supra*.   Further, the defendant officers are entitled to qualified immunity because, as of the date of the subject incident, no reasonable officer could have believed that the amount of force

used to takedown and handcuff Nathan Pellow was unreasonable under the circumstances presented.

## B.  The Alleged Use of Force After Handcuffing

Plaintiff contends that, after Nathan Pellow had been restrained and handcuffed, Officer McKibben stood on Nathan Pellow's back and bounced up and down. The sole support for Plaintiff's contention is the deposition testimony of Arthur Gill. Mr. Gill testified as follows:

> A:     Well, I am running from this - - this is Nuway Street.   I approach.  They're on top of Mr. Pellow, who is face down.  They're trying to get him handcuffed.
>
> Q:     Okay.
>
> A:     Shortly after I arrive, just within a few seconds, 30 seconds possibly, they finally got his hands cuffed and he was under control.
>
> Q:     Okay.  And is he still face down?
>
> A:     Yes, sir.
>
> Q:     Are his hands cuffed only, or are his hands and ankles cuffed?
>
> A:     I only recall his hands being cuffed.
>
> Q:     Okay.  Then what happens?
>
> A:     Everyone started getting of Mr. Pellow. The firemen had started walking to their rig.  I recall one of them said they had gotten bit. Officer Barnhill said he had suffered a shoulder injury, and everyone had just started walking away from Mr. Pellow outside of Mr. - - Officer McKibben.
>
> Q:     At that time, as far as you could see, was Nathan Pellow alive?

17

A:      Yes, he was.

Q:      Was he breathing?

A:      Yes, he was.

Q:      Did he say anything?

A:      No.

Q:      Okay.  And how do you know he was alive?

A:      Well, I looked at him.  He was moving a little bit, and he was -- he was breathing.

Q:      Okay.  Then what did you see?

A:      There was a white female that approached me.  I don't know who it was.  We never did engage in any conversation because as soon as she approached me, she looked over my shoulder.  I naturally responded, looked over my right shoulder and saw McKibben standing on Mr. Pellow's back.

Q:      Okay.  For how long did you see McKibben stand on Mr. Pellow's back?

A:      It was only a second or two, because as soon as I saw it, I ordered him to get off of Mr. Pellow.

Q:      Okay.  Do you know how long Mr. McKibben had been standing on Mr. Pellow's back?

A:      No, I don't.

Q:      Okay.  Did you see him jump on the back?

A:      It wasn't a jump.  It was more of a bounce.

Q:      Okay.  And then what happened?

A:      Well, I approached Mr. Pellow to just assess to see if he was okay, and he had seemed like his face turned a little -- his skin turned

18

a little bit of a darker color, and he was sort of gasping for air at that point.

Q:   And then what happened?

A:   I ran to the firemen who were - - their rig was at the Nuway - - on the street - - Nuway, in front of this trailer, and I requested their assistance.  I said, "Hey, this guy needs some help."

A:   Then what happened?

Q:   They all ran over to Mr. Pellow, loaded him up and took him away.

(Gill, pages 14-16)

With respect to Defendant Officers Barnhill, Roy, Adams and Vanhorn, even assuming Mr. Gill's testimony to be credible (see *infra*), there is no dispute that these officers were not involved in, nor did they witness, Officer McKibben allegedly stand/bounce on Mr. Pellow's back.  It is axiomatic that individual liability under § 1983 typically requires that the defendant have personal involvement in the constitutional deprivation. Thus, in order to sustain his claim against these officers, Plaintiff must establish that Mr. Pellow suffered a specific injury as a result of specific conduct of each of these particular officers and show an affirmative link between the injury and the conduct of these officers. *Rizzo, supra*.  See *Turner v. Scott*, 119 F.3d 425, 429, (6th Cir. 1997) (holding that a police officer can only be held liable under a "failure to intervene" theory if (1) the officer observed or had reason to know that another officer was using excessive

force; and (2) the officer had both the opportunity and means to prevent the use of force.)

According to Mr. Gill, all of the officers *other than Officer McKibben* had left the area and returned to the ambulance/firetruck, approximately 100 to 150 yards away, when Officer McKibben allegedly bounced on Mr. Pellow's back. (Gill, pages 14-16, 43) Accordingly, there is no dispute that these officers did not participate in, nor did they have the means or opportunity to intervene to prevent Officer McKibben's alleged use of force. Summary judgment is warranted in favor of these officers.

With respect to Officer McKibben, the firefighters who helped the officers handcuff Nathan testified unequivocally that Officer McKibben did not stand or bounce on Mr. Pellow's back.   Indeed, three of the firefighters testified that, contrary to Mr. Gill's testimony, they never left Mr. Pellow's side after he was handcuffed and they all confirm that Officer McKibben did not stand or bounce on Mr. Pellow's back.  (Jacobs, pages 14-15, 19-22, 29-33; Breen, pages 17-19, 23-24; Muirhead, pages 12-15, 21, 28-29; Garwood, page 27; Thrift, page 21). The firefighters testified that, almost nearly immediately after they were able to get Mr. Pellow handcuffed, they turned him over and noticed that he was in respiratory distress. (Jacobs, pages 13-15, 19-22; Breen, pages 17-18, 23-24; Muirhead, pages 14-15)

Mr. Gill claims to have told McKibben to get off of Mr. Pellow but this is not corroborated by the audio recorded from Officer McKibben's body-microphone. (Dashcam Video/Audio – Car 31, 11:24:17 – 11:25:34). Nor is there any audio from Mr. Gill corroborating this. Mr. Gill testified that his body-microphone was activated (Gill, pages 28-31, 47-51) but, the affidavit of Commissioner Green and the video of Mr. Gill's car evidences that audio was never recorded. (Affidavit of Jere Green; Dashcam Video - Car S-1). When asked how the audio could be erased but the video left in tact, Mr. Gill had no idea. (Gill, pages 28-30, 48-49)

Further, despite having allegedly witnessed this alleged bouncing by Officer McKibben, Mr. Gill claims that he never wrote a report of the incident. When presented with a copy of the police report containing a narrative written by him – a narrative which makes no mention of Officer McKibben standing/bouncing on Mr. Pellow's back – Mr. Gill claims that he did not write it. (Gill, pages 20-23, 54-55; Police Incident Report). The Warren Police Department utilizes the Courts and Law Enforcement Management Information System (CLEMIS) for preparing and maintaining incident reports; CLEMIS is administered by Oakland County. (Affidavit of Jere Green)  Based upon Commissioner Green's review of the CLEMIS log for the subject incident (attached his Affidavit as Exhibit A), former Sergeant Gill logged into CLEMIS and viewed the incident report on the afternoon

21

of the subject incident (August 30, 2013) at 2:31:34 p.m. and again at 2:51:56 p.m.; former Sergeant Gill also logged in and viewed the incident report on August 31, 2013 at 11:17:19 a.m.; former Sergeant Gill began his report on August 31, 2013 at 11:25:29 a.m. and he updated the narrative of his report on September 1, 2013 from 12:23:25 p.m. to 12:25:56 p.m. (Affidavit of Jere Green)

According to Mr. Gill, the Warren Police Department knows and has access to officers' user names and passwords, and claims that someone other than him must have written the narrative attributed to him. (Gill, pages 21-22). However, this is simply not supported by any evidence. The Warren Police Department does not know or retain individual officers' passwords for CLEMIS; indeed, the Oakland County administrator of CLEMIS does not know or retain individual officers' passwords for CLEMIS. (Affidavit of Jere Green)  If an officer's CLEMIS password needs to be reset, a member of Warren Police Department's Information Technology department will reset the officer's password to a generic default password and the officer is then able to reset the password himself. (Affidavit of Jere Green)

Further, any and all activity related to an officer's CLEMIS password is recorded in an audit trail. (Affidavit of Jere Green)  Based upon Commissioner Green's review of the audit trail of former Sergeant Gill (attached to his Affidavit as Exhibit B), there was no activity relative to Arthur Gill's CLEMIS password

between January 25, 2013 and December 3, 2013; former Sergeant Gill's password was not changed on August 30, 2013, August 31, 2013, or on September 1, 2013 when the CLEMIS log indicates that he was viewing and updating the subject incident report. (Affidavit of Jere Green)

Mr. Gill's explanation for why his alleged complaint about Officer McKibben was never recorded anywhere or corroborated by actual evidence is wholly discredited by the record.  Because Arthur Gill's and Plaintiff's contention is so utterly discredited by the record evidence, no reasonable juror could believe that Officer McKibben stood and jumped on Nathan Pellow's back while he was restrained and summary judgment is therefore appropriate.

## CONCLUSION

For the reasons stated above, there exists no genuine issue of material fact that the defendant officers are entitled to summary judgment of Plaintiff's complaint and defendants respectfully request that this Honorable Court grant their motion and enter an order dismissing Plaintiff's complaint in its entirety.

Respectfully submitted,


 s/ John J. Gillooly_____
Garan Lucow Miller P.C.
1155 Brewery Park Blvd., Suite 200
Detroit, MI  48207
313.446.5501
jgillooly@garanlucow.com
P41948


Dated:  December 12, 2016

## LIST OF EXHIBITS

Exhibit A          Complaint

Exhibit B          Dashcam Video – Car 27 (Barnhill)

Exhibit C          Dashcam Video/Audio – Car 31 (McKibben)

Exhibit D          Dashcam Video – Car S-1 (Gill)

Exhibit E          deposition of firefighter Brian Jacobs

Exhibit F          deposition of Richard Breen

Exhibit G          deposition of James Muirhead

Exhibit H          deposition of Curtis Thrift

Exhibit I          deposition of Theodore Garwood

Exhibit J          deposition of Arthur Gill

Exhibit K          Warrant;

Exhibit L          Affidavit of Jere Green

Exhibit M          Police Incident Report

Exhibit N          May 15, 2016 email

Exhibit O          deposition of Shane McKibben

Exhibit P          deposition of Kevin Barnhill

Exhibit Q          deposition of Robert Roy

Exhibit R          deposition of Dale Vanhorn

Exhibit S          Plaintiff's discovery responses

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2016, my assistant, Pamela Stogdill, electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

and I hereby certify that on December 12, 2016, my assistant, Pamela Stogdill, mailed by United States Postal Service the foregoing document to the following non-ECF participants, with full legal postage prepaid thereon and deposited in the United States mail:  **NA**

s/ John J. Gillooly
1155 Brewery Park Blvd., Suite 200
Detroit, MI 48207
313.446.5501
jgillooly@garanlucow.com
P41948

26