UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

JENNIFER PELLOW as Personal
Representative of the Estate of                Case No:   15-11765
NATHAN WESLEY PELLOW,
                                                Hon. Terrance G. Berg
        Plaintiff,                              Magistrate R. Steven Whalen
v.

KEVIN BARNHILL, SHANE MCKIBBEN,
ARTHUR L. GILL, ROBERT ROY,
JOHN ADAMS, and DALE VAN HORN,
Jointly and Severally,

        Defendants.

---

| BEN M. GONEK (P43716) | JOHN J. GILLOOLY (P41948) |
|---|---|
| Law Offices of Ben Gonek, PLLC | Garan Lucow Miller, P.C. |
| Attorneys for Plaintiff | Attorneys for Defendants Barnhill, |
| 615 Griswold Street, Suite 1116 |    McKibben, Roy, Adams & VanHorn |
| Detroit, MI  48226 | 1155 Brewery Park Blvd., Ste. 200 |
| (313) 963-3377 | Detroit, MI  48207 |
| ben@goneklaw.com | (313) 446-5501 |
|  | jgillooly@garanlucow.com |

JOEL B. SKLAR (P38338)
Law Offices of Joel B. Sklar
Co-counsel for Plaintiff
615 Griswold Street, Suite 1116
Detroit, MI  48226
(313) 963-4529
joel@joelbsklarlaw.com

---

### REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

Plaintiff's response concedes that the force used by the officers to secure Nathan Pellow in handcuffs was objectively reasonable and that the only use of force at issue in this case is Officer McKibben's alleged standing/bouncing on Nathan Pellow's back. (Response, page 17) In support of her contention that she has sustained her burden of presenting a genuine issue of material fact as to whether Officer McKibben in fact stood on Mr. Pellow's back and bounced, Plaintiff relies primarily on three things: (1) the fact that the Defendant Officers asserted their Fifth Amendment right against self incrimination; (2) the McKibben audio goes silent for 45 seconds at a time which, according to Plaintiff, "corresponds with the exact period when Gill contends he told McKibben to get off Pellow's back"; and (3) Art Gill's testimony/affidavit which insinuate that evidence was tampered and/or fabricated. Plaintiff's argument is simply factually inaccurate and legally insufficient to avoid the Defendant Officers' entitlement to qualified immunity and summary judgment.

**Officers' Assertion of the Fifth Amendment**

Plaintiff's vast conspiracy/cover-up theory focuses primarily on the fact that the Defendant Officers asserted their Fifth Amendment right against self incrimination – a fact which Plaintiff asserts entitles her to a negative inference or presumption of wrongdoing by the Officers. What is glaringly and conveniently absent from Plaintiff's response is the acknowledgement that she herself created the need for the Officers to exercise their right by warning defense counsel (the

2

day before the officers were to be deposed) that Plaintiff/Plaintiff's counsel would be filing a complaint with the Department of Justice and/or the FBI. This potential for criminal prosecution was falsely teed-up by Plaintiff in what can only be viewed as procedural gamesmanship in light of the fact that, despite her threat, Plaintiff never actually followed through and pursued her threatened course of action. This has left the Officers indefinitely under threat of investigation while giving Plaintiff an argument to use in hopes of avoiding summary judgment. While Plaintiff argues that the Defendant Officers are improperly using the Fifth Amendment as both a sword and a shield, the reality is that it is Plaintiff who is improperly fencing.

Defendants sustained their burden in support of their motion and assertion of qualified immunity by offering credible admissible evidence establishing that no reasonable juror could conclude that Officer McKibben stood and bounced on Mr. Pellow's back. In response, Plaintiff seeks to capitalize upon her unrealized threat of criminal prosecution by relying upon a negative inference of wrongdoing by the Officers as a result of having done exactly what they had to do (and what Plaintiff no doubt hoped they would do) to protect themselves from Plaintiff's bogus threat of criminal prosecution. Plaintiff cannot derive any evidentiary benefit from her procedural fencing.[1]

---

[1] In the event that summary judgment is not granted and the matter proceeds to a trial, Defendants anticipate seeking a stay of this action in light of having asserted

**The silent 45 seconds on McKibben's audio**

Plaintiff repeatedly states that the 45 seconds of silence on McKibben's audio (from 11:22:29 to 11:23:14) corresponds with "the exact period when Gill contends he told McKibben to get off Pellow's back." Plaintiff offers no factual support for this contention and it is simply wrong. Gill did not testify as to what time he allegedly observed McKibben standing/bouncing. But he did testify that this standing/bouncing did not occur until after Pellow had been handcuffed and "everyone . . . outside of Mr. – Officer McKibben" – had started walking away. (Gill, pages 14-15). However, a review of McKibben's audio evidences that the officers/firefighters were still struggling with Pellow and attempting to handcuff him for at least a minute after the audio returns. It is simply untenable for Plaintiff to contend that the audio silence coincides at all – let alone exactly – with Gill's story.

**Gill's audio was altered**

Without offering any evidentiary support – expert or otherwise - Plaintiff claims that Gill's audio was tampered.[2] In support, Plaintiff relies upon Gill's affidavit which states that the video does not show his lights or siren activated.

---

their Fifth Amendment rights and the fact that Plaintiff's threatened criminal prosecution has not been resolved (indeed, even commenced).

[2] Should this matter proceed to trial, Defendants anticipate filing a motion in limine to exclude Gill's testimony that the audio and/or VisionHawk system were tampered with or altered as Gill is not an expert in this area nor has Plaintiff identified an expert witness capable of providing credible testimony on this issue.

This, however, is blatantly inaccurate. A review of the Gill video (S-1) evidences that recording starts at 11:17:41; his lights are activated at 11:18:05; and his siren is activated at 11:18:08. While the video captures the activation of every other indicator on the VisionHawk viewer – lights, siren, brakes – the transmitter button is never activated. Plaintiff suggests that the transmitter button is not activated – not because audio was never recorded – but because audio must somehow have been "scrubbed" although Plaintiff offers no evidence of how that could happen. Indeed, while Art Gill claims to have been in charge of the Technical Services Division, he has "no idea" how the audio could have been stripped.[3] Plaintiff's theory is unsupported speculation refuted by the record evidence.

**Bystander Liability**

In an attempt to avoid dismissal of her claims against all other officers other than Officer McKibben, Plaintiff argues that the "record is not fully developed" as to whether the "Bystander Defendants"[4] were in a position to observe and prevent

---

[3] In fact, if Plaintiff's/Art Gill's theory of tampering is even plausible, one would have to conclude that, not only was the audio scrubbed, but the VisionHawk viewer was also somehow altered (although Gill, despite his TSD experience, does not have any idea how that could happen). Unless the VideoHawk viewer were also altered, the transmitter button would still activate, but there would be no sound available. The Gill video clearly shows that the transmitter button was never activated – i.e., the microphone was never turned on.

[4] Curiously, Plaintiff does not refer to Officer Barnhill as a "Bystander Defendant" despite having conceded that Officer McKibben was the only officer who actually allegedly used force and despite the fact that Gill's testimony puts Officer Barnhill as having walked away at the time of McKibben's alleged actions. (Gill, pages 14-

5

Officer McKibben's alleged standing/bouncing. However, Plaintiff's sole evidence in support of the alleged incident is Art Gill – and according to Art Gill, "everyone . . .outside of . . . Officer McKibben" had started to walk away at the time Gill allegedly turned to see Officer McKibben's supposed actions (Gill, pages 14-15). If Art Gill is to be believed that the incident happened at all, then Art Gill must be believed as establishing that no one other than Gill was in a position to observe the incident.

Moreover, even assuming there was a question as to whether any of the other officers were in a position to observe McKibben's alleged act, there is no dispute that this alleged act was an unanticipated, discrete act which lasted a mere "second or two" (Gill, page 15) and, therefore, none of the other officers can be held liable under 42 U.S.C. § 1983 for not intervening. See *Wells v. City of Dearborn Heights*, 538 Fed. App'x. 631, 639-640 (6th Cir. 2013), citing *Ontha v. Rgutherford County*, 222 Fed. Appx. 498, 506 (6th Cir. Tenn. 2007), and rejecting a "failure to intervene" claim where the alleged uses of force were rapid, discrete incidents which did not afford the defendant officer sufficient opportunity to intervene.

Plaintiff's reliance upon *Kent v. Oakland County*, 810 F.3d 384 (6th Cir. 2016) is misplaced as it is materially distinguishable. The officers in *Kent*

---

15). There is no factual basis for characterizing Officer Barnhill as anything other than a bystander.

6

interacted and spoke with the plaintiff over a period of time while the events unfolded and one officer gave a verbal warning prior to deploying the taser. *Id*. at 387-388. In addition, the record supported the inference that the bystander officer was physically in a position to handcuff the plaintiff and obviate the need for the taser. *Id.* Under these facts, the Sixth Circuit concluded that the bystander officer had both an opportunity and the means to prevent the other officer from deploying the taser. In contrast, according to Gill's testimony, McKibben's alleged use of force was unexpected, not prededed by any warning, and occurred in a split-second. In addition, according to Gill's testimony, none of the other officers were physically in a position to prevent McKibben's alleged act. Neither *Kent*, nor any other Sixth Circuit authority, put the Defendant Officers on notice that their alleged inaction under the circumstances presented was violative of the Fourth Amendment and the officers are entitled to qualified immunity.

WHEREFORE, Defendants respectfully request that this Honorable Court grant them summary judgment of Plaintiff's complaint.

Respectfully submitted:<br>
GARAN LUCOW MILLER, P.C.<br>
<br>
s/ John J. Gillooly<br>
John J. Gillooly P41948<br>
Attorney for Defendants<br>
1155 Brewery Park Blvd., Suite 200<br>
Detroit, MI  48207<br>
313.446.5501<br>
jgillooly@garanlucow.com

Dated:  January 23, 2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>January 23, 2017</u>, my assistant, Deborah Brossoit, electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Ben M. Gonek
ben@goneklaw.com,lisa@goneklaw.com

and I hereby certify that on <u>January 23, 2017</u>, my assistant, Deborah Brossoit, mailed by United States Postal Service the foregoing document to the following non-ECF participants, with full legal postage prepaid thereon and deposited in the United States mail:

NA

<u>s/John J. Gillooly</u>
GARAN LUCOW MILLER, P.C.
1155 Brewery Park Blvd., Ste 200
Detroit, MI   48207
313.446.5501
jgillooly@garanlucow.com
P41948