UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

JENNIFER PELLOW as Personal
Representative of the Estate of
NATHAN WESLEY PELLOW,

      Plaintiff,

v.

KEVIN BARNHILL, SHANE MCKIBBEN,
ROBERT ROY, JOHN ADAMS, and
DALE VAN HORN, Jointly and Severally,

      Defendants.

Case No:   15-11765

Hon. Terrance G. Berg
Magistrate R. Steven Whalen

| | |
|---|---|
| BEN M. GONEK (P43716)<br>Law Offices of Ben Gonek, PLLC<br>Attorneys for Plaintiff<br>500 Griswold Street, Suite 2450<br>Detroit, MI 48226<br>(313) 963-3377 | JOHN J. GILLOOLY (P41948)<br>Garan Lucow Miller, P.C.<br>Attorneys for Defendants<br>1155 Brewery Park Blvd, Ste 200<br>Detroit, MI  48207<br>(313) 446-5501 |
| JOEL B. SKLAR (P38338)<br>Attorney for Plaintiff<br>500 Griswold Street, Suite 2450<br>Detroit, MI  48226<br>(313) 963-4529 | |

## PLAINTIFF'S *REVISED* COUNTER-STATEMENT OF MATERIAL FACTS

1. Admitted.

2. Admitted.

3. Admitted.

1

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted only that Pellow refused to comply with the officer's verbal commands and Barnhill and McKibben gave chase. (Ex. C, Dashcam Video/Audio-Car 31 at 11:17:05 - 11:20:24; Ex 2.)

8. Admitted only that five Warren firemen arrived (Jacobs, Breen, Muirhead, Thrift, Garwood) and tried to assist in handcuffing Pellow. (Ex. 7.)

9. Admitted.

10. Admitted.

11. Neither admitted nor denied for lack of information. Firefighter Thrift testified he was bitten by Pellow.

12. Admitted.

13. Admitted that McKibben and Barnhill, assisted by the firemen, handcuffed Pellow's wrists and ankles. Denied that *any* dashcam video shows this for the reason that it is untrue. The parked squad cars were not in position to video Pellow's arrest. Barnhill's audio was inoperative throughout. McKibben's audio mysteriously stops recording at 11:22:29 and mysteriously resumes at 11:23:14. The silent 45 seconds corresponds with the exact period when Gill contends he told McKibben to get off Pellow's

back. (Exhibit B; Exhibit C at 11:22:29-11:23:4; Exhibit D).

14. Denied. Sgt. Gill testified that the firefighters returned to their rig once Pellow was restrained. After Gill ordered McKibben to get off Pellow's back, he saw that Pellow's condition had rapidly deteriorated and summoned the fire fighters to return from their parked rigs to assist Pellow. (Ex. J, Gill, 16, 38.)

15. Admitted.

16. Admitted that Gill saw McKibben stand and bounce on Pellow's back. Defendants, however, misquote Gill's testimony. Gill testified that upon arrival he drove past the altercation because his view was obstructed. (Gill, 12). He never testified, nor is there any record evidence, to place the fire truck 100-150 yards away. (Gill, 41)

17. Admitted.

18. Denied. McKibben's body microphone does not corroborate Gill's testimony because the recording goes silent for 45 seconds and then resumes. Gill listened to his audio recording when he returned to the Warren PD from the scene and heard his verbal command to McKibben. (Ex. M, Gill, 29, 51). That recording has since disappeared. The 45 seconds of silence corresponds with the exact period when Gill contends he ordered McKibben to get off Pellow's back. (Exhibit C.)

3

19. Admitted that the Dashcam Video for Car S-1 is silent. Gill is certain his microphone recorded his verbal communications at the scene because he listened to his recording that day to make sure he what he said was recorded and that the evidence was secured. (Gill, p 29, 51.) It appears that Gill's recording was deleted.

20. Admitted.

21. Denied. The affidavit of Warren Police commissioner Jere Green is not based on Green's personal knowledge and, therefore, is inadmissible. Green's affidavit is offered to gloss over the individual Defendants' invocation of their *Fifth Amendment* right to remain silent at their respective depositions. Far from proving Gill's body microphone was never turned on, the silent video establishes that Gill activated his lights and flashers which automatically activated his body microphone. The digital files for Exhibits B, C and D (the Dashcam video for Barnhill, McKibben and Gill respectively) all state they were "last modified September 2, 2013," three days *after* the incident. (Ex 9.)

22. Admitted.

23. Admitted.

24. Admitted. Sgt. Gill did not generate, author or contribute to the police report attributed to him. (Gill, 21-22.) This means that someone else utilized Gill's

4

log-in information to manufacture the report which bears his name. Gill's log-in information was known to others in the Warren PD. (Gill, 21-22.)

25. Admitted.

26. Denied. Green's affidavit is not made from personal knowledge and is, therefore, inadmissible. (Gill's Declaration, Exhibit 9.)

27. Denied. Green's affidavit is not made from personal knowledge. (Gill Declaration, Exhibit 9.)

28. Admitted.

29. Denied. Sgt. Gill neither generated nor authored the written report attributed to him. (Gill, 20-23, 54-55).

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Denied. All Defendants invoked their *Fifth Amendment* right against self-incrimination at their depositions. The self-serving rationale offered for that action is untrue. The realistic potential for criminal liability attached the moment McKibben stood and bounced on Pellow's back and was compounded when Defendants fabricated and tampered with evidence. (Gill, 15, 16, 21, 22, 34, 54, Exhibit 9)

35. Neither admitted nor denied as Plaintiff does not know what action, if any, is contemplated by the FBI or DOJ.

## Additional Facts Requiring Denial of the Motion

36. Sergeant Gill was dispatched to the scene when it seemed there were not enough officers to contain the situation. (Ex J, Gill p 11, Ex D, at 11:20:40.)

37. Gill activated his lights and siren. This automatically activated his body microphone which was working. (Ex D, Gill dep, 28-31, 39).

38. On arrival, Gill observed Barnhill, McKibben and firemen struggling to subdue Pellow. "I just saw a mass of people at that time." (Gill, p14, 43).

39. Shortly after Gill's arrival, the struggle ended. Pellow was handcuffed, shackled and under control. (Gill, p 14).

40. With Pellow safely restrained, "Everyone started getting off Mr. Pellow." The firemen walked a short distance away to their rig. Everyone but McKibben began to walk away. (Gill, p 14-15).

41. Pellow was fully restrained, alive and breathing but red in the face. "He did not appear to be much of a threat." (Gill, p 15, 61).

42. Gill turned his back briefly and walked away. An unknown white female approached him. Before they could have any verbal interaction, Gill saw McKibben standing on Pellow's back, bouncing up and down (Gill, p 15, 16, 61).

43. Gill immediately ordered McKibben to get off Pellow's back and McKibben complied. (Gill, p 15). Gill's verbal command to McKibben was recorded. (Gill, 28-31, 47-51.)

44. McKibben weighed between 230 and 250 pounds (Gill, p 62).

45. After McKibben stepped off Pellow's back, Pellow's skin turned darker (red to purple) and his breathing went from heavy to gasping and Gill urgently requested the firemen to return to assist Pellow. (Gill, 16, 38).

46. It is a well-recognized violation of police procedure to apply weight to the back of a prone, restrained, obese, physically stressed and possibly obtunded person who has stopped resisting arrest, because of the risk of positional asphyxia and death. (Gill, 17).

47. Pellow was rolled over onto his back, assessed, and rushed to the nearest hospital where he was pronounced dead. Ex D, at 11:32:29.

48. On August 31, 2013, the Oakland County Medical Examiner performed an autopsy. "The posterior torso shows a fresh bruise in the right mid-portion of the back." The cause of death was "positional asphyxia." Ex 1, 6.

49. Gill, the ranking police official on site, realized this was "a serious incident and acted", to preserve evidence. He ordered that the scene be secured and summoned an evidence technician. Photographs were taken. During this process, he was informed of Pellow's death. (Gill, 52) (Exhibit 4, 5).

7

50. About 20-30 minutes after Pellow was transported to the hospital, Captain Matheney, the Department's third-ranking officer, arrived on the scene. (Gill, p18, 55).

51. Gill told Matheney what McKibben had done to Pellow, and that Pellow was dead. Matheney's immediate verbal response was: "That didn't happen." (Gill, p 19).

52. Gill was concerned. Matheney promised a debriefing with all officers who were at the scene but Gill felt as if Matheny was "blowing me off." (Gill, p 23, 25, 27).

53. Matheney held the debriefing but intentionally excluded Gill. (Gill, p 54).

54. Gill testified that "Part of my responsibility is to lock all the video so they don't disappear…" "And my audio had captured me ordering McKibben off Pellow's back and me talking to Captain Matheney in regards to what occurred." (Gill, p29). By 2016 the audio had been tampered with. Gill does not know who did this or how, but he is certain that his audible recording once existed. (Gill, p 28-29).

55. Defendants supply the court with three dashcam videos, Car 27, Barnhill, Exhibit B; Car 31, McKibben, Exhibit C, and Car S-1, Gill, Exhibit D.

56. The Barnhill video has no sound and the camera captures whatever is visible looking through the windshield of Barnhill's car. He arrives at 11:15 and

8

encounters Pellow. Between 11:17 and 11:38 the video captures nothing significant. With no audio, Barnhill's actions cannot be fully documented. (Exhibit B).

57. The McKibben video has some surviving sound but is incomplete and appears to have been edited. (Exhibit C).

58. At 11:21:13 Gill's vehicle arrives, overshoots the site of the fracas because his view is obstructed by a fire truck, stops and backs up. *The struggle to subdue Pellow is not captured by any of the video and any suggestion to the contrary is demonstrably false.* (Exhibits B, C and D).

59. At 11:22:29 the body microphone of McKibben stops working. At 11:23:14 it resumes. Exhibit C. *The silent 45 seconds corresponds with the exact period when Gill contends he told McKibben to get off Pellow's back.*

60. The Gill video is likewise silent. It shows Gill approaching just before 11:21 with lights and flashers on. His arrival, overshooting the scene and backing up, is captured at 11:21:13. Gill's vehicle faces a long access road. At 11:32 a fire truck with police escort exits in view of Gill's dashcam, both with flashers activated. This is the transport of Pellow to the hospital. (Exhibit D).

61. The digital files of Exhibits B, C and D all state they were "last modified September 2, 2013." This is three days *after* the incident. It is unknown

how the tapes were modified or why.

62. Gill testified that he did not write the report in the file which bears his electronic signature. The department had his password and someone other than Gill wrote the report. (Gill, 21-22, 24).

63. On August 21, 2014, Gill emailed Lawrence Garner, executive lieutenant of the police department, James Moore, union president, his own attorney and others and describes Mr. Pellow's death and the relevant circumstances. That email is consistent with his testimony. (Ex. 8, Gill Email.)

64. Defense counsel John Gillooly answered the Complaint on behalf of all Defendants, including Gill, on June 2, 2015. Neither Gillooly nor anyone on his staff had spoken with Gill. Gill learned he was a Defendant from an officer and former colleague, persistently called Gillooly's office, and eventually a lawyer associated with Gillooly mailed him the complaint on July 27, 2015. Later another law firm substituted for Gillooly's firm, Garan Lucow, as counsel for Gill. It was not until May, 2016 that Gill was able, with successor counsel, to review the video, audio and written reports and ascertain that audio was missing and a report had been forged in his name. (Exhibit 9).

                                                         Respectfully submitted,

                                                         */s/ Ben M. Gonek*
                                                        BEN M. GONEK (P43716)
                                                        Attorney for Plaintiff
                                                        500 Griswold Street, Suite 2450
                                                        Detroit, MI  48226
                                                        (313) 963-3377


                                                        */s/ Joel B. Sklar*
                                                        JOEL B. SKLAR (P38338)
                                                        Attorney for Plaintiff
                                                        500 Griswold Street, Suite 2450
                                                        Detroit, MI  48226
                                                        (313) 963-4529

Dated:  March 16, 2017