UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JENNIFER PELLOW as Personal Representative of the Estate of NATHAN WESLEY PELLOW,<br><br>Plaintiff,<br>v.<br><br>KEVIN BARNHILL, SHANE McKIBBEN, ROBERT ROY, JOHN ADAMS, and DALE VAN HORN, Jointly and Severally,<br><br>Defendants. | Case No. 15-11765<br>Hon. Terrence G. Berg |

**OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DKT. 31)**

### I.  Introduction

This is an excessive force case brought pursuant to 42 U.S.C. § 1983. Plaintiff Jennifer Pellow, as Personal Representative of the Estate of Nathan Wesley Pellow, alleges that Warren Police Officer Shane McKibben, Defendant, used excessive force resulting in the death of Nathan Pellow while fellow Warren Police Officers, Kevin Barnhill, Robert Roy, John Adams, and Dale Van Horn, also De-

fendants, stood by and looked on. Defendants have moved for summary judgment, and Plaintiff opposes. For the reasons outlined below, Defendants' motion for summary judgment with respect to Plaintiff's Fourteenth Amendment claim (Count II) is **DENIED**; Defendant McKibben's motion with respect to Plaintiff's Fourth Amendment claim (Count I) against him is **DENIED**; and Defendants Barnhill, Roy, Adams, and Van Horn's motion with respect to Plaintiff's Fourth Amendment claim (Count I) against them is **DENIED WITHOUT PREJUDICE**.

## II. Background

The lengthy factual background and procedural history of this case will be summarized below in separate subsections.

### *a. Factual Background*

On August 30, 2013, Pellow crashed his vehicle into a trailer home located at 25509 Doncea Drive in Warren, Michigan. Dkt. 1, Pg. ID 4. Pellow was injured in the accident. Dkt. 1, Pg. ID 4. Defendant Barnhill, a Warren Police Department ("WPD") officer, was dispatched to the scene. Dkt. 1, Pg. ID 4. Barnhill's squad car contained a "dashcam" video recorder. Dkt. 31-3. Upon arrival, Barnhill exited his squad car and encountered Pellow. Dkt. 31-3 at 11:14:29–11:15:59. Pellow attempted to punch Barnhill and walked away. Dkt. 31-3 at 11:14:29–11:15:59. Barnhill then requested assistance from WPD Officer McKibben. Dkt. 1, Pg. ID 4.

About one minute later, Defendant McKibben arrived in his patrol car. Dkt. 31-4 at 11:17:05. His patrol car was also equipped with a dashcam video recorder. Dkt. 31-4. As recorded on McKibben's dashcam video, Barnhill and McKibben repeatedly told Pellow to get down on the ground, but Pellow refused to comply and fled. Dkt. 31-4 at 11:17:05–11:20:24. Barnhill and McKibben then chased Pellow. Dkt. 31-4 at 11:17:05–11:20:24.

As these events unfolded, five Warren Fire Department firefighters, some driving a fire truck and others driving an ambulance, arrived to help secure Pellow. Dkt. 31-6, Pg. ID 189–90, 194; Dkt. 31-7, Pg. ID 200–02; Dkt. 31-8, Pg. ID 210–11; Dkt. 31-9, Pg. ID 219–20; Dkt. 31-10, Pg. ID 227–28; Dkt. 31-4 at 11:20:30. Pellow dodged officers and firefighters alike before darting up a trailer-home's steps in an apparent attempt to enter the trailer. Dkt. 31-6, Pg. ID 189. During the scramble, Pellow punched Firefighter Brian Jacobs in the face. Dkt. 31-6, Pg. ID 191–92; Dkt. 31-7, Pg. ID 202. Jacobs then tackled Pellow off the steps and onto the ground. Dkt. 31-6, Pg. ID 191–92; Dkt. 31-8, Pg. ID 210; Dkt. 31-4 at 11:20:30–11:24:17. Once Pellow was on the ground, McKibben and Barnhill, along with all five firefighters, attempted to handcuff Pellow. Dkt. 31-6, Pg. ID 189–90, 194; Dkt. 31-7, Pg. ID 201–02, 204; Dkt. 31-8, Pg. ID 210–11; Dkt. 31-9, Pg. ID 220; Dkt. 31-10, Pg. ID 229; Dkt. 31-4 at 11:20:30–11:24:17.

At some point during the melee, the WPD dispatched more officers to the scene. Dkt. 31-11, Pg. ID 238. Several officers responded including Sgt. Arthur Gill,[1] along with Defendants Roy, Adams, and Van Horn. They arrived on the scene as McKibben, Barnhill, and the five firefighters struggled to handcuff Pellow. Dkt. 31-2, Pg. ID 174–75; Dkt. 31-11, Pg. ID 238–39. A dashcam video recorder was mounted in Gill's patrol car. Dkt. 31-5. Eventually, McKibben, Barnhill, and the firefighters were able to handcuff Pellow's wrists and shackle his ankles as he lay face-down on the ground. Dkt. 31-6, Pg. ID 189–90; Dkt. 31-7, Pg. ID 200–03; Dkt. 31-8, Pg. ID 210–11; Dkt. 31-9, Pg. ID 219–21; Dkt. 31-10, Pg. ID 227–29; Dkt. 31-11, Pg. ID 239.

The parties present competing narratives of what happened after Pellow was handcuffed and under control. Plaintiff's narrative is based on Gill's testimony, while Defendants' narrative is based on the firefighters' testimony. As noted in more detail below, Defendants do not rely on their own testimony because during their depositions—with the exception of Adams, who appears not to have been deposed—they invoked their Fifth Amendment right against self-incrimination.

---

[1] At the time of this incident, Gill was employed as a Sergeant with the Warren Police Department. He was later terminated.

Plaintiff's narrative relies on Gill's testimony. Gill states the following:

- After Pellow was handcuffed and under control, the firefighters and all the officers other than McKibben left the area and returned to the ambulance and fire truck approximately 100 to 150 feet away.[2] Dkt. 31-11, Pg. ID 239.
- At this point, Pellow was fully restrained, alive, breathing, and "did not appear to be much of a threat." Dkt. 31-11, Pg. ID 239, 250. Pellow was, however, red in the face. Dkt. 31-11, Pg. ID 239, 250.
- Everyone but McKibben, including the firefighters and Defendants Barnhill, Roy, Adams, and Van Horn, began to walk away. Dkt. 31-11, Pg. ID 239.
- Gill then turned his back from Pellow and McKibben for "just a couple seconds" and walked fifteen to twenty feet away from Pellow and McKibben. Dkt. 31-11, Pg. ID 247.
- An unknown woman approached Gill. Dkt. 31-11, Pg. ID 247.
- Before they could have any verbal interaction, Gill noticed the woman looking over his shoulder. Dkt. 31-11, Pg. ID 239.
- Gill turned to look over his shoulder and saw McKibben stand and "bounce" on Pellow's back for "only a second or two." Dkt. 31-11, Pg. ID 239, 247, 250.

---

[2] In Defendants' brief, they claimed the ambulance and firetruck were 100 to 150 yards away from Pellow. At oral argument, Defendants noted that their brief misstated the distance between Pellow and the parked fire truck and ambulance as 100 to 150 yards rather than 100 to 150 feet.

5

- Gill immediately ordered McKibben to get off Pellow's back, McKibben promptly complied, and the command was recorded on Gill's body-microphone. Dkt. 31-11, Pg. IDs 239, 242–43, 247.

- After he ordered McKibben to get off Pellow's back, Gill saw that Pellow's condition had rapidly deteriorated—Pellow's skin turned from red to purple; his breathing went from heavy to gasping—so Gill summoned the firefighters to return from their parked rigs to assist Pellow. Dkt. 31-11, Pg. ID 239, 245.

- Pellow was then rushed to the nearest hospital, where doctors pronounced him dead. Dkt. 31-4 at 11:32:29.

Defendants' version of events tracks the firefighters' testimony.

The firefighters state that:

- After Pellow had been restrained, Defendants stood up and quickly noticed Pellow was not breathing normally. Dkt. 31-6, Pg. ID 189–94; Dkt. 31-7, Pg. ID 202–04; Dkt. 31-8, Pg. ID 210, 214; Dkt. 31-4 at 11:24:59–11:25:01.

- Except for Curtis Thrift (who went to the ambulance to wipe his eyes), none of the firefighters left Pellow's side from the time he was handcuffed until he was turned over to the hospital. Dkt. 31-6, Pg. ID 194; Dkt. 31-7, Pg. ID 203; Dkt. 31-8, Pg. ID 214; Dkt. 31-9, Pg. ID 220–21; Dkt. 31-10, Pg. ID 232.

- McKibben never stood or bounced on Pellow's back. Dkt. 31-6, 191, 194; Dkt. 31-7, Pg. ID 202, 204; Dkt. 31-8, Pg. ID 210–11, 214; Dkt. 31-9, Pg. ID 222; Dkt. 31-10, Pg. ID 232.

The Oakland County Medical Examiner performed an autopsy and found that Pellow's "posterior torso show[ed] a fresh bruise in

6

the right mid-portion of the back." Dkt. 34-2, Pg. ID 386. The cause of death is listed as "substance abuse." Dkt. 34-2, Pg. ID 391. Contributing causes of death are listed as hypertrophic cardiomyopathy, coronary atherosclerosis, and "asphyxia by physical restraint." Dkt. 34-2, Pg. ID 390. The medical examiner concluded:

> This 31-year-old white male, Nathan Pellow, died as a result of substance abuse causing bizarre erratic behavior and necessitating application of physical restraint that resulted in asphyxia. Hypertrophic cardiomyopathy and marked focal narrowing and hardening of the left coronary artery were contributory. There was no evidence of other trauma. In consideration of the circumstances surrounding this death, the results of this post-mortem examination and the results of the toxicological analyses the manner of death is accident.

Dkt. 34-2, Pg. ID 391. Additionally, Pellow's body in several places showed scratches, bruises, and "brush burns." Dkt. 34-2, Pg. ID 386.

Plaintiff and Gill also allege that after Pellow was rushed to the hospital, members of the WPD conspired to cover up what had happened. In response to Defendants' motion for summary judgment, Plaintiff points to a number of facts in support of this theory. But because the Court need not consider these facts to resolve Defendants' motion, the Court will not list them here.

### b. *Procedural History*

On May 18, 2015, Plaintiff filed this lawsuit, alleging the use of excessive force resulting in Pellow's death pursuant to 42 U.S.C.

7

§ 1983. Dkt. 1. Plaintiff initially named Gill as a defendant. Dkt. 1. Defense counsel answered the Complaint on behalf of all Defendants, including Gill, (Dkt. 10), but no one from Defense counsel's office spoke to Gill before filing the answer. Dkt. 34-10, Pg. ID 416. Gill learned he was a defendant from an officer and former colleague who persistently called Defense counsel's office. Dkt. 34-10, Pg. ID 416. Defense counsel then mailed Gill the Complaint. Dkt. 34-10, Pg. ID 416. When it became clear that a conflict existed between Gill and Defendants, Defense counsel arranged to have a new attorney represent Gill. Dkt. 40, Pg. ID 454. Following Gill's deposition, Plaintiff dismissed her claims against him. Dkt. 28.

As discovery progressed, Plaintiff scheduled the depositions of Defendants in May 2016. On the day before depositions were to take place, Plaintiff's counsel informed Defendants' counsel that Plaintiff intended to file a complaint regarding Pellow's death with the Federal Bureau of Investigation ("FBI"). The following day, Defendants asserted their Fifth Amendment rights against self-incrimination during their depositions—except Adams, who appears not to have been deposed. Dkt. 31-16; Dkt. 31-17; Dkt. 31-18; Dkt. 31-19.

The FBI investigated the incident and provided its findings to the United States Attorney's office. Dkt. 45, Pg. ID 526. In November 2015—approximately six months after McKibben, Barnhill,

8

Roy, and Van Horn pleaded the Fifth Amendment during their depositions—an Assistant United States Attorney decided not to pursue criminal charges against Defendants. Dkt. 45, Pg. ID 526. Plaintiff and Defendants learned of this decision not to prosecute in February 2017. Although the parties obtained the FBI's investigation file, Plaintiff did not seek to re-depose Defendants, nor did she inquire whether Defendants would again plead the Fifth Amendment.[3]

Following the close of discovery, Defendants filed a motion for summary judgment. Dkt. 31. Plaintiff opposed the motion. Dkt. 34. Following full briefing, the Court heard argument on Defendants' motion on June 28, 2017.

### III. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence and draw reasonable inferences from the

---

[3] At oral argument on June 28, 2017, Defense counsel indicated that Defendants would *not* invoke their Fifth Amendment right if deposed again.

9

evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party prevails as a matter of law. *See Anderson*, 477 U.S. at 252.

Within the context of an action brought pursuant to 42 U.S.C. § 1983, the non-moving party "must demonstrate a genuine issue of material fact as to the following 'two elements: (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) [that] the deprivation was caused by a person acting under color of state law.'" *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)). There is no dispute that Defendants acted under color of state law, so the Court's inquiry focuses on whether there was an actionable deprivation of a right secured under the Fourth

10

Amendment (Count I) or Fourteenth Amendment (Count II) to the Constitution of the United States.

## IV. Analysis

Plaintiff has brought two causes of action pursuant to 42 U.S.C. § 1983. The first claim is for excessive force under the Fourth Amendment; the second is for deprivation of due process under the Fourteenth Amendment. Plaintiff alleges that the same facts support both claims.

Defendants move for summary judgment on both of Plaintiff's claims. Dkt. 31, Pg. ID 134–36. Defendants brief in support of that motion, however, does not specifically discuss the Fourteenth Amendment claim. Dkt. 31. And Defendants have not moved to dismiss that claim under Federal Rule of Civil Procedure 12(b)(6). At oral argument, Defendants made it clear that they are seeking summary judgment on the Fourteenth Amendment claim. District courts need not consider arguments in support of a motion for summary judgement raised for the first time during oral argument. *Lamson & Sessions Co. v. Peters*, 576 Fed. Appx. 538, 543 (6th Cir. 2014); *see, e.g.*, *Maher v. International Paper Co.*, 600 F. Supp. 2d 940, 949 (W.D. Mich. 2009) ("[T]his court will not consider an argument that is raised for the first time at oral argument"). Consequently, the Court will not consider Defendants' argument that they are entitled to summary judgment on Plaintiff's

11

Fourteenth Amendment claim (Count II). Defendants' motion with respect to their request for summary judgment on Count II is therefore **DENIED**.

With respect to Plaintiff's Fourth Amendment claim, Defendants argue they are entitled to qualified immunity both as to Defendants' actions in handcuffing Pellow and as to McKibben's alleged bounce on Pellow. Dkt. 31, Pg. ID 151–65; Dkt. 36, Pg. ID 425. Plaintiff concedes that Defendants' actions in subduing and handcuffing Pellow did not amount to excessive force. Dkt. 34, Pg. ID 364. The only action being challenged as excessive force is McKibben's alleged bounce on Pellow.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether government officials are entitled to qualified immunity generally requires two[4] inquir-

---

[4] The Sixth Circuit has in the past required a three-step inquiry that also addresses "whether the plaintiff has offered sufficient evidence 'to indicate what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'"

ies: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538–39. These two prongs need not be considered sequentially. *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (*citing Pearson v. Callahan*, 555 U.S. 223 (2009)).

Here, Plaintiff's excessive force claims differ slightly between McKibben and the other Defendant Officers. Plaintiff argues that McKibben himself used excessive force when he bounced on Pellow after Pellow had been restrained. And Plaintiff argues that Barnhill, Roy, Adams, and Van Horn failed to intervene to prevent McKibben's use of excessive force. The Court will first address Plaintiff's claim against McKibben, then will address Plaintiff's claim against the other Defendant Officers.

### a. Plaintiff's Claim against Officer Shane McKibben

Plaintiff's claim against McKibben is premised on his alleged bounce on Pellow after Pellow was restrained. McKibben concedes that the case law is clear that "police officers may not use force against a suspect once he is compliant, subdued, no longer resisting, or securely detained." Dkt. 31, Pg. ID 156, *citing Hagans v Franklin*

---

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). But more recent cases apply the two-step inquiry presented here. *See, e.g., Campbell v. City of Springsboro, Ohio*, 700 F.3d 779 (6th Cir. 2012).

*Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2011). Rather than arguing within the framework of a qualified immunity analysis, then, McKibben contests Gill's credibility by arguing that other evidence so contradicts Gill's testimony that no reasonable jury would credit Gill's version of events. Dkt. 31, Pg. ID 159–165.

Plaintiff responds that Gill's credibility is a matter for a jury to decide. Dkt. 34, Pg. ID 369–80.

"When evaluating the defense of qualified immunity on a motion for summary judgment, the court must adopt the plaintiff's version of the facts." *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012). "If, based upon these facts, no constitutional right was violated, there is no need for further inquiry." *Id.* "However, if the court determines that a violation could be made out, the Court must then ask if the right was clearly established at the time of the alleged violation." *Id.*

On this record, McKibben is not entitled to qualified immunity (and thus to summary judgment). Plaintiff submits the eye-witness testimony of a police sergeant who claims that McKibben stood on Pellow's back and bounced after Pellow was handcuffed, shackled, and lying face-down on the ground. The Court need go no further in its analysis because McKibben concedes that, if Plaintiff's version of the facts is true, he violated one of Pellow's clearly established Fourth Amendment rights and therefore would not be entitled to

14

qualified immunity. Dkt. 31, Pg. ID 156. As mentioned above, for purposes of resolving this motion the Court *must* accept Plaintiff's version of the facts as true. *See Campbell* 700 F.3d at 786. Defendants' reliance on evidence contrary to Gill's testimony is unavailing when the question is whether a material issue of fact exists. Despite having moved for summary judgment, McKibben has conceded that he is not entitled to it. Indeed, the arguments that McKibben raises all relate to Gill's credibility. This attack is misplaced; McKibben may press his attack at trial, but it is inappropriate at the summary judgment stage. McKibben's motion for summary judgment on Count I is therefore **DENIED**.[5]

---

[5] Plaintiff also argues that a number of WPD officers conspired to cover up what happened during the incident, and that this cover-up included deleting or altering audio and video recordings that detailed the incident. But the Court need not reach this argument to resolve Defendants' motion.

To be sure, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). Here, however, the record does not blatantly contradict Plaintiff's version of the facts. Plaintiff has eye-witness testimony of what occurred, and the things to which Defendants point to discredit that testimony— dashcam footage and body-microphone recordings (or lack thereof)—are not definitive enough to create a blatant contradiction. None of the dashcam recordings show the end of the struggle between Pellow and the officers and firefighters. Although it is true

15

### b. Plaintiff's Claim against Officers Kevin Barnhill, Robert Roy, John Adams, and Dale Van Horn

Plaintiff's claim against Barnhill, Roy, Adams, and Van Horn is premised on their failure to intervene to prevent McKibben from using excessive force. *See Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (noting that an officer may be held liable for use of excessive force if he breached a duty of protection by failing to intervene against another officer's use of excessive force). An officer can be liable for a failure to intervene "when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.* at 429. It is a plaintiff's burden to establish that a defendant officer should have known excessive

---

that McKibben's body-microphone recording did not contain any recording of Gill's command to McKibben to stop standing on Pellow, it also contains an unexplained 45-second period of silence. And although there is no recording from Gill's body-microphone establishing that Gill gave the command, Gill testifies that such a recording at one time existed, and that he listened to it shortly after the incident. Gill asserts that others at the WPD might have destroyed it.

This kind of conflicting evidence must be weighed by the jury. There is no uncontroverted video that blatantly contradicts Gill's testimony so that the Court would be required to discredit Plaintiff's version of the facts. At this stage, the Court must accept as true Plaintiff's version that McKibben bounced on Pellow. Consequently, regardless of whether WPD officers covered up what happened, McKibben is not entitled to qualified immunity.

force was being used and that he had the opportunity and means to intervene. *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013).

Defendants Barnhill, Roy, Adams, and Van Horn also attack the credibility of Gill's testimony. Dkt. 31, Pg. ID 159–65. And they submit that, even assuming McKibben is liable, they may not be held liable for failing to intervene to prevent McKibben's alleged use of excessive force. Dkt. 31, Pg. ID 159–65; Dkt. 36, Pg. ID 425–30. Plaintiff responds that Barnhill and the firefighters began walking away, but Roy, Adams, and Van Horn remained near McKibben and Pellow, such that they had an opportunity to intervene in McKibben's alleged use of excessive force. Dkt. 34, Pg. ID 371.

Regarding the location of the officers relative to Pellow, the Parties' arguments again focus in large part on Gill's credibility. But this time, the parties' positions are reversed: Barnhill, Roy, Adams, and Van Horn argue that the Court should credit Gill's statement that they were approximately 100 to 150 feet away when McKibben allegedly bounced on Pellow, while Plaintiff argues that the Court should reject this specific portion of Gill's testimony and should instead draw an adverse inference from the fact that Barnhill, Roy, and Van Horn invoked their Fifth Amendment rights during depositions, and conclude that they must have been closer than 100 to 150 feet. The distance between Pellow and Barnhill, Roy, Adams, and Van Horn during McKibben's alleged bounce on Pellow

17

is significant because Plaintiff's claim is based on an allegation that Barnhill, Roy, Adams, and Van Horn were in a position to prevent McKibben from using excessive force on Pellow. See *Wells v. City of Dearborn Heights*, 538 Fed. App'x. 631, 639–40 (6th Cir. 2013) (rejecting liability under a "failure to intervene" claim where the alleged use of force was rapid, such that defendant officer lacked sufficient opportunity to intervene).

The Court need not determine whether Plaintiff is entitled to an adverse inference based on Barnhill's, Roy's, and Van Horn's invoking the Fifth Amendment at their depositions. As Defense counsel noted at oral argument, Defendants are now willing to forgo invoking the Fifth Amendment at future depositions. So the record is currently underdeveloped. Consequently, Barnhill, Roy, Adams, and Van Horn's motion for summary judgment with respect to Count I is **DENIED WITHOUT PREJUDICE**. The Court will reopen discovery to permit Plaintiff to depose the WPD Officers who previously invoked their Fifth Amendment rights at their depositions, after which Barnhill, Roy, Adams, and Van Horn may again move for summary judgment.

## V. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment with respect to Plaintiff's Fourteenth Amendment claim (Count II) is **DENIED**. McKibben's motion with respect to Plaintiff's Fourth Amendment claim against him (Count I) is **DENIED**. And Barnhill, Roy, Adams, and Van Horn's motion with respect to Plaintiff's Fourth Amendment claim against them (Count I) is **DENIED WITHOUT PREJUDICE**.

The parties are hereby **ORDERED** to submit a joint plan for reopening discovery by July 28, 2017.

**SO ORDERED.**

Dated: July 20, 2017        s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on July 20, 2017

                            s/A. Chubb
                            Case Manager

19